UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


KIRSTEN CHILDRESS,

     Plaintiff,

v.                                                                    Case No: 6:25-cv-868-JSS-RMN

NICHOLAS BLAKE MOORE, EXP
REALTY, LLC, EXP WORLD
HOLDINGS, INC., and DOES 1 - 10,

     Defendants.
_____/

## ORDER

Defendants eXp Realty, LLC and eXp World Holdings, Inc.—collectively, eXp[1]—move to compel arbitration or, in the alternative, move to dismiss the first amended complaint for failure to state a claim. (Dkt. 42.) Plaintiff, Kirsten Childress, opposes the motion. (Dkt. 46.) Upon consideration, for the reasons outlined below, the court denies Defendants' motion to compel arbitration and grants in part and denies in part Defendants' motion to dismiss.

## BACKGROUND

Plaintiff is a licensed real estate agent who executed an independent contractor agreement with eXp Realty in 2021. (Dkt. 38 at 4.) Plaintiff attended eXp's 2023

---

[1] According to the operative complaint, eXp Realty, LLC is a limited liability company and eXp World Holdings, Inc. is the parent company of eXp Realty, LLC. (Dkt. 38 at 3.)

shareholder summit in May 2023. (*Id.* at 7.) As part of the summit, Plaintiff attended a networking event meant for eXp agents and staff. (*Id.* at 8–9.) At the event, Plaintiff allegedly remembers drinking one or two "cocktails over several hours while eating and socializing with colleagues." (*Id.* at 10.) According to Plaintiff, the next thing she remembers is "being raped and strangled" by Defendant Nicholas Blake Moore in his hotel room. (*Id.*) Defendant Moore attended the conference as a guest of one of eXp's influencer agents, Nathan Abbott. (*Id.* at 7–8.)

Shortly after the incident, Defendants' Director of Agent Compliance assured several of Defendants' agents that Defendant Moore would not be allowed at any of Defendants' events going forward. (*Id.* at 17.) Defendants' Director of Agency Compliance also allegedly assured several of Defendants' agents that he had confirmed that Defendant Moore was no longer working with Defendants' agents, despite evidence to the contrary. (*Id.* at 18–19.) Additionally, during this time, Defendants' "receiv[ed] multiple complaints about Abbott disparaging and making retaliatory comments about [Plaintiff] to other agents." (*Id.* at 19.) In response, Defendants' informed Plaintiff that Abbott was suspended for six months. (*Id.*) Nevertheless, Abbott was given a "coveted speaking role" at one of Defendants' events in October 2023, which Defendant Moore allegedly attended as well. (*Id.* at 19–20.)

Plaintiff brings two counts against Defendant Moore for sexual battery and intentional infliction of emotional distress. (*Id.* at 23–24.) Plaintiff also brings a breach of contract claim against Defendant eXp Realty, (*id.* at 24–25), and ratification and

negligent undertaking claims against Defendants eXp Realty and eXp World Holdings, (*id.* at 25–31).

## APPLICABLE STANDARDS

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, generally governs the validity and enforcement of arbitration agreements. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). "The FAA's primary substantive provision provides that a written agreement to arbitrate a controversy arising out of that contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (quoting 9 U.S.C. § 2). Section 4 of the FAA grants district courts the authority to compel arbitration once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not [a]n issue." 9 U.S.C. § 4. The FAA thus codifies a "strong federal preference for arbitration of disputes." *Musnick v. King Motor Co.*, 325 F.3d 1255, 1258 (11th Cir. 2003); *accord Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 (11th Cir. 2016) ("Federal policy strongly favors enforcing arbitration agreements.").

The preference of arbitrability, however, "does not apply to the determination of whether an arbitration agreement exists." *Rensel v. Centra Tech, Inc.*, No. 17-24500-CIV, 2018 WL 4410110, at *10 (S.D. Fla. June 14, 2018) (citing *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1115–16 (11th Cir. 2014)). "Accordingly, when determining whether an arbitration agreement exists, courts generally . . . apply ordinary state-law

- 3 -

principles that govern the formation of contracts." *Dasher*, 745 F.3d at 1116 (quotation omitted).  Because arbitration "is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002) (quotation omitted). "[T]he first task of a court asked to compel arbitration . . . is to determine whether the parties agreed to arbitrate [the] dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  "To prove the existence of a contract under Florida law, the party seeking to enforce the contract must prove 'offer, acceptance, consideration[,] and sufficient specification of essential terms.'" *Schoendorf v. Toyota of Orlando*, No. 608-CV-767-ORL-19DAB, 2009 WL 1075991, at *6 (M.D. Fla. Apr. 21, 2009) (quoting *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).  "The proponent of the contract must prove these elements by a preponderance of the evidence." *Id.* Thus, "the party seeking enforcement of an [arbitration] agreement has the burden of establishing that an enforceable agreement exists." *Sinclair v. Wireless Advocs., LLC*, No. 20-CV-60886-RAR, 2021 WL 865458, at *7 (S.D. Fla. Mar. 1, 2021) (alteration adopted and quotation omitted).

Courts should "treat motions to compel arbitration similarly to motions for summary judgment." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1215 n.3 (11th Cir. 2021).  "[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore v. Jefferson*

- 4 -

*Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016) (quotation omitted). "The party asserting the existence of a contract has the burden of proving its existence and its terms." *Id.* at 1330 (quotation omitted). In determining whether to compel arbitration, district courts must apply the summary judgment standard of viewing the facts in "the light most favorable to the nonmoving party." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

In deciding a motion to dismiss for failure to state a claim, the court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff[s]." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). Typically, a court analyzing a motion to dismiss considers only the four corners of the complaint and the exhibits attached to the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiffs plead facts that allow the court to "draw the reasonable inference that the defendant is liable" for the alleged misconduct. *Id.* While "detailed factual allegations" are not generally required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to "contain . . . a short and plain statement of [a] claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 10(b) requires the plaintiff to "state [his] claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). To "promote clarity," Rule 10(b) also requires the plaintiff to state "each claim founded on a separate transaction or occurrence . . . in a separate count." *Id.* "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Shotgun pleadings "fail . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. A court should dismiss a complaint as a shotgun pleading "where 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (emphasis omitted) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)).

## ANALYSIS

Defendants move to compel arbitration, or, in the alternative, dismiss Plaintiff's complaint for failure to state a claim. (Dkt. 42.) The court addresses each in turn.

### A. Motion to Compel Arbitration

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), 9 U.S.C. §§ 401–02, carves out disputes related to sexual assault and sexual harassment from the FAA. "[A]t the election of the person alleging conduct

- 6 -

constituting a sexual harassment dispute or sexual assault dispute," the EFAA provides that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a). The EFAA defines a "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact, as such terms are defined in section 2246 of title 18 or similar applicable Tribal or State law, including when the victim lacks capacity to consent." *Id.* § 401(3). Whether the EFAA applies to a dispute is a question for the court. *Id.* § 402(b) ("The applicability of this chapter to an agreement to arbitrate and the validity and enforceability of an agreement to which this chapter applies shall be determined by a court, rather than an arbitrator . . . .").

"It is axiomatic that the interpretation of a statute must begin, and usually ends, with the text of the statute." *Boca Ciega Hotel, Inc. v. Bouchard Transp. Co.*, 51 F.3d 235, 237 (11th Cir. 1995). "When interpreting the text, we give undefined terms their plain, ordinary, and most natural meaning." *Id.* Courts presume that "Congress says in a statute what it means and means in a statute what it says there." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 488 (11th Cir. 2015) (quotation omitted). "Where the language of a statute is unambiguous, . . . [courts] need not, and ought not, consider legislative history." *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002) (en banc); *see United States v. Gonzales*, 520 U.S. 1, 6 (1997) ("Given the straightforward statutory command, there is no reason to resort to legislative history.").

According to the text of the statute, the EFAA applies to cases that relate to a dispute involving a nonconsensual sexual act or sexual contact. *See* 9 U.S.C. § 402(a) ("[N]o predispute arbitration agreement . . . shall be valid or enforceable with respect to a case . . . [that] relates to the sexual assault dispute"); *id.* § 401(3) (defining "sexual assault dispute" as "a dispute involving a nonconsensual sexual act or sexual contact"). The terms "relate to" and "involving" both have broad meanings. *See D.C. v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129 (1992) (explaining that the phrase "relate to" is "deliberately expansive language chosen by Congress" and that applying the phrase's ordinary meaning gives the phrase its intended effect (quotation omitted)); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) (observing that the ordinary meaning of the phrase "relating to" is "a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'" (quoting Black's Law Dictionary 1158 (5th ed. 1979))); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (interpreting the term "involving" broadly); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995) ("[T]he word 'involving' is broad . . . ."); *Polen v. API Grp. Life Safety USA, LLC*, No. 3:25-CV-1196-SI, 2025 WL 3251349, at *3 (D. Or. Nov. 21, 2025) (explaining in the context of the EFAA that "[t]he plain meaning of the term 'involving' is broad" and thus "[a] dispute involving sexual assault, therefore, is a dispute that in some way includes or concerns sexual assault").

Given the text of the EFAA's operative provision, "the EFAA's applicability . . . hinges on the facts alleged." *Doe (J.K.) v. Celebrity Cruises, Inc.*, 792 F.

- 8 -

Supp. 3d 1371, 1380 (S.D. Fla. 2025).  "Congress's choice to define the EFAA's scope in terms of disputes involving nonconsensual acts or sexual contact rather than claims involving the same is telling here."  *Id.* at 1378 (alteration adopted and emphasis and quotation omitted); *see Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 384 (6th Cir. 2026) ("Congress applied the EFAA's bar to arbitration to cases and not claims or causes of action, and did not take obvious alternative paths in its drafting . . . .").  "A 'dispute' denotes 'a conflict or controversy, esp[ecially] one that has given rise to a particular lawsuit.'" *Doe (J.K.)*, 792 F. Supp. 3d at 1378 (quoting *Dispute*, Black's Law Dictionary (12th ed. 2024)).  On the other hand, "[a] 'claim' is an 'assertion of an existing right' or 'a right to payment or to an equitable remedy.'"  *Id.* at 1378–79 (quoting *Claim*, Black's Law Dictionary (12th ed. 2024)).  "Congress wrote the EFAA to apply when a plaintiff alleges a sexual assault dispute, not . . . when a plaintiff pleads a specific sexual assault claim." *Id.* at 1379.  Accordingly, "Congress requires courts to focus on the dispute at issue to determine the EFAA's applicability." *Id.* (emphasis omitted). Additionally, "the EFAA's use of the phrase 'allege conduct constituting a sexual assault or sexual harassment dispute,' makes clear that a sexual assault dispute is formed by facts." *Id.* at 1380 (defining the terms "conduct" and "constitute" and concluding that "under the EFAA, a sexual assault dispute is made up or formed by allegations of behavior or deeds," so "[i]t is the conduct that makes the claims subject to the EFAA").

Here, Plaintiff alleges that she was drugged at Defendants' event and then sexually assaulted. (Dkt. 38 at 1–3, 15–16, 24–31.)  Defendants do not challenge

Plaintiff's allegations of conduct constituting a sexual assault or that this alleged sexual assault forms the basis of this dispute.  (*See* Dkt. 42 at 2 n.1.)  That alone triggers the EFAA's bar on arbitration.  *See Polen*, 2025 WL 3251349, at *5 (reasoning that the plaintiff alleged a dispute that involved a sexual assault and her case fell "within the unambiguous text of the EFAA" because the plaintiff alleged that the defendant "caused negative employment repercussions because of her sexual assault" by a third party and "[t]he EFAA broadly defines the type of dispute that falls within its framework as any dispute 'involving' an underlying nonconsensual sexual act").  Additionally, Plaintiff brings a claim for sexual battery.  (Dkt. 38 at 23.)  "When a plaintiff files a case that includes a sexual-[assault] claim, that case certainly has a connection with and reference to the claim."  *See Bruce*, 168 F.4th at 383 (quotation omitted); *Greenwood v. Cross Country Mortg., LLC*, No. CV 3:25-6527-MGL-PJG, 2026 WL 884171, at *5 (D.S.C. Mar. 31, 2026) ("Because [the plaintiff] brings at least one claim relating to a sexual harassment dispute, the arbitration agreement is unenforceable as to the entire case.").

Thus, because Plaintiff alleges conduct constituting a sexual assault and the case relates to that dispute, the EFAA's bar on arbitration applies.  (*See* Dkts. 38, 46.)  *See Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 92 (2d Cir. 2024) (applying the EFAA and holding that retaliation claims "resulting from a report of sexual harassment is related to conduct that is alleged to constitute sexual harassment" within the scope of the EFAA (alteration adopted and quotation omitted)).  Accordingly, Defendants' motion to compel arbitration is denied.  *See id.* (concluding that a district court did not

err in denying a motion to compel arbitration); *Bulic v. Celebrity Cruises, Inc.*, No. 25-21231-CIV, 2025 WL 1783865, at *4 (S.D. Fla. June 27, 2025) (denying a motion to compel arbitration and concluding that the dispute was subject to the EFAA due to the "nature of the conduct" alleged—a sexual assault); *Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 185 (S.D.N.Y. 2023) (concluding that the EFAA applied to block arbitration of the plaintiff's case because she plausibly pled conduct constituting sexual harassment).

Defendants contend that there "are no claims or allegations of sexual assault or sexual harassment against eXp or any of eXp's employees" and that "Plaintiff alleges she was sexually assaulted by a third party," so "there is no dispute here that is covered by the EFAA." (Dkt. 42 at 2 n.1.)[2]  Because Defendants' argument appears in a footnote without citation to legal authority, it is forfeited. *See United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (explaining that a party forfeits a position when "he cites no legal authority to support it"); *U.S. Sec. & Exch. Comm'n v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 811–12 (11th Cir. 2015) (holding that the defendants forfeited arguments when they "failed to flesh out [the] arguments, except

---

[2] Defendants also filed a notice of supplemental authority: *Farnham v. Grindr, LLC*, No. 8:25-CV-1260-TPB-AEP, 2025 WL 3062698 (M.D. Fla. Nov. 3, 2025). (*See* Dkt. 57.)  That case is distinguishable; in *Farnham* both the victim and the alleged perpetrators were consumers with "no legal relationship to" the defendant. *Farnham*, 2025 WL 3062698, at *2.  There, the court noted that "[t]he concerns underlying the EFAA" were "the obscuring of sexual assault and sexual harassment misconduct by companies." *Id.*  In contrast, here Plaintiff had a legal relationship with Defendants. (Dkt. 38 at 2, 4.)  Accordingly, the "concerns underlying the EFAA[,] the obscuring of sexual assault and sexual harassment misconduct by companies," does apply to this case where there is an allegation of sexual assault by an independent contractor of Defendants in connection with an event hosted by Defendants. *See Farnham*, 2025 WL 3062698, at *2. (Dkt. 38 at 2, 4.)

by referring to them in a footnote"). Still, because courts "are not at liberty to rewrite [a] statute" and "must give effect to the text Congress enacted," the court concludes that Defendants' interpretation of the statute is incorrect. *Wiersum*, 785 F.3d at 488 (emphasis and quotation omitted). Defendants assert that the EFAA does not apply "to bar enforcement of an agreement to arbitrate where the plaintiff entered into the arbitration agreement with an entity and the alleged sexual misconduct was committed by a third party." (Dkt. 42 at 2 n.1.) But "Congress did not write the statute that way," and Defendants' desired interpretation requires rewriting the statute—either by eliminating or adding words. *See United States v. Naftalin*, 441 U.S. 768, 773 (1979). The court addresses each in turn.

"[T]he canon against surplusage, which reflects the idea that every word and every provision is to be given effect, disfavors a narrow reading." *Bruce*, 168 F.4th at 383 (quoting *Nielsen v. Preap*, 586 U.S. 392, 414 (2019)); *see also Rix v. Polsinelli PC*, No. CV 23-03062 (AHA), 2025 WL 2674767, at *7 (D.D.C. Sept. 18, 2025) (collecting cases). "Congress could have provided plaintiffs with protection limited to sexual-assault claims" between employees and employers "by simply striking the words 'a case which is filed under Federal, Tribal, or State law and relates to the' from [section] 402(a)." *Bruce*, 168 F.4th at 383. "With the law written as such, an arbitration agreement would simply not be valid or enforceable with respect to the sexual assault dispute," as Defendants seem to advocate, so Defendants' "preferred reading would cause those struck words to have no consequence, and its reading is therefore disfavored." *See id.* (quotation omitted); *Doe (J.K.)*, 792 F. Supp. 3d at 1381 (explaining

- 12 -

that "the 'case' is something separate and apart from the sexual assault dispute underlying it").

Defendants' desired interpretation could also be achieved by inserting words into the statute, but "[a]textual judicial supplementation is particularly inappropriate when Congress has shown that it knows how to adopt the omitted language or provision." *See Lackey v. Stinnie*, 604 U.S. 192, 205 (2025) (ellipses and quotation omitted). Here,

> there is no wording in the definition of "sexual assault dispute" connecting the dispute to the parties' agreement to arbitrate. The definition does not include any causal link between the defendant and the underlying sexual assault, such as requiring that a plaintiff allege conduct by the defendant that caused or enabled the sexual assault. It also contains no limitation regarding who committed the sexual assault, where it was committed, or when it was committed. And Congress could easily have added any of those limitations. In the subsection immediately preceding the definition of the term "sexual assault dispute," for example, Congress defined the term "predispute joint-action waiver" by reference to "the parties to the [arbitration] agreement." *Compare* 9 U.S.C. §§ 401 (2) and (3). If Congress wanted to limit the definition of "sexual assault dispute" only to those disputes about nonconsensual sexual acts or conduct occurring between parties to an arbitration agreement, it certainly knew how to do so.

*Polen*, 2025 WL 3251349, at *4. Accordingly, the court concludes that "[i]t is enough that the dispute involves a nonconsensual sexual act or sexual contact." *See Bulic*, 2025 WL 1783865, at *4 (collecting cases).

"[I]t is significant, too, that the EFAA amended the FAA directly" as it "reinforces Congress's intent to override—in the sexual [assault] context—the FAA's background principle that, in cases involving both arbitrable and non-arbitrable claims, the former must be sent to arbitration even if this will lead to piecemeal litigation."

*Johnson v. Everyrealm, Inc.*, 657 F. Supp. 3d 535, 560 (S.D.N.Y. 2023) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 19 (2011)). "[J]ust as a 'case' might involve multiple claims, it also might involve multiple parties, including parties against whom no claims covered by the [EFAA] are asserted." *Clay v. FGO Logistics, Inc.*, 751 F. Supp. 3d 3, 20 (D. Conn. 2024). "As long as the claims and parties are properly joined—and no party here suggests otherwise—then when a claim against one party is covered by the EFAA, the entire case cannot be arbitrated if the plaintiff so elects." *See id.*; *see also Diaz-Roa v. Hermes L.P.C.*, 757 F. Supp. 3d 498, 532 n.9 (S.D.N.Y. 2024) (declining to "carve up" a "case to which the EFAA applies"). Thus, even if, as Defendants suggest, one "party is not subject to the EFAA," that does not mean that "there is no dispute . . . that is covered by the EFAA." (Dkt. 42 at 2 n.1.) *See Puris v. TikTok Inc.*, No. 24CV944 (DLC), 2025 WL 343905, at *6 (S.D.N.Y. Jan. 30, 2025) (declining the defendants request to "sever the claims not involving allegations of sexual harassment" and instead concluding that the EFAA excludes the entire case from arbitration).[3]

---

[3] It is also notable that the statute states that "no predispute arbitration agreement . . . shall be valid or enforceable with respect to a case . . . [that] relates to the sexual assault dispute." 9 U.S.C. § 402(a). The statute does not state that the predispute arbitration agreement must be between "the entity or an employee of the entity that is a party to the arbitration agreement," as Defendants assert. (Dkt. 42 at 2 n.1.) *See Polen*, 2025 WL 3251349, at *5–6 (denying a motion to compel arbitration where it was undisputed that no employee of the defendant sexually assaulted the plaintiff because the court concluded that the plaintiff's case related to a sexual assault and thus "f[e]ll within the unambiguous text of the EFAA"). Instead, "to trigger the EFAA's bar on arbitration, a case must (1) 'allege[e] conduct constituting a sexual assault or sexual harassment dispute,' (2) be 'filed under Federal, Tribal, or State law,' and (3) 'relate to the sexual assault or sexual harassment dispute.'" *Doe (J.K.)*, 792 F. Supp. 3d at 1380 (alteration adopted and quoting 9 U.S.C. § 402(a)). Because those elements are met here, the EFAA's bar on arbitration applies. (*See* Dkts. 38, 46.)

As explained above, Plaintiff's case relates to a sexual assault dispute, and, as such, any predispute arbitration agreement is unenforceable as to "the entirety of the case relating to the . . . dispute, not merely the discrete claims in that case that themselves . . . allege such [assault]." *See Johnson*, 657 F. Supp. 3d 535 at 559; *see also Bruce*, 168 F.4th at 382 ("[T]he EFAA's text renders an arbitration agreement unenforceable with respect to a plaintiff's entire case, or action, and not only with respect to certain claims therein." (alterations adopted and quotation omitted)). Ultimately, "there is no indication that Congress limited the applicability of the EFAA" as Defendants suggest, and the court declines to do so. *See Doe (J.K.)*, 792 F. Supp. 3d at 1381; *Usai v. Club Mgmt. Miami II, LLC*, 801 F. Supp. 3d 1295,1308–10 (S.D. Fla. 2025) (explaining that the EFAA precludes arbitration of claims alleging retaliation against the plaintiffs for reporting conduct alleged to constitute sexual harassment even when the plaintiffs were not the victims of the conduct).

### B. Failure to State a Claim

In the alternative, Defendants move to dismiss Plaintiff's claims for breach of contract, ratification, and negligent undertaking for failure to state a claim. The court addresses each in turn.

#### 1. Breach of Contract

A breach of contract claim under Florida law has three elements: (1) the existence of a valid contract, (2) a material breach of the contract, and (3) damages caused by the breach. *Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1313 (11th Cir. 2019). Defendants do not dispute that Plaintiff has satisfied the first and

third elements and the court concludes that Plaintiff has plausibly pleaded these elements.  (*See* Dkt. 38 at 24–25; Dkt. 42 at 15–17.)

As to the second element, Defendants assert that Plaintiff fails to set forth facts sufficient to show that Defendants breached the contract.  (*See* Dkt. 42 at 15–17.) Specifically, Defendants argue that the contract did not impose any obligations "concerning the incident involving a third party, such that a failure to adhere to such obligations would constitute a breach."  (*Id.* at 16.)  However, Defendants cite no case law in support of this argument.  (*See id.* at 16–17.)  *See Markovich*, 95 F.4th at 1379 (explaining that a party forfeits a position when they "cite[] no legal authority to support it").  Further, "an inquiry into . . . the subject matter covered by [a] contract[] is precisely the kind of factual inquiry that is not appropriate under the legal standard for a [m]otion to [d]ismiss."  *Kelly v. Walt Disney Parks & Resorts, Inc.*, No. 6:22-CV-1919-RBD-DCI, 2023 WL 5804197, at *2 (M.D. Fla. Aug. 23, 2023) (quotation omitted); *see id.* (declining to dismiss a breach of contract claim based on the argument that no contract term was breached); *see also Whitney Nat. Bank v. SDC Communities, Inc.*, No. 809CV01788EAKTBM, 2010 WL 1270264, at *2 (M.D. Fla. Apr. 1, 2010) ("Defendants' argument centers on the interpretation of language in the contract and asks the [c]ourt to interpret the contract in their favor.  At a motion to dismiss, it is inappropriate to decide such a factual matter.").

Even if the contract only applies to "conduct attributable to eXp agents," Plaintiff plausibly alleges that she was drugged at an eXp event that was meant only for eXp agents and staff.  (Dkt. 42 at 16; *see* Dkt. 38 at 9–10.)  Plaintiff alleges that

Defendant Moore was invited to the event by an eXp agent. (Dkt. 38 at 12.) After the alleged assault, Plaintiff claims that eXp's Director of Agent Compliance assured various eXp agents that Defendant Moore would not be allowed into any eXp event going forward and that Defendant Moore was no longer working with eXp agents, but that this was untrue. (*Id.* at 17–20.) And Plaintiff alleges that Abbott—an eXp agent— repeatedly told people that Plaintiff was not raped, and that "[d]espite receiving multiple complaints about Abbott disparaging and making retaliatory comments about" Plaintiff to other agents, Defendants did not conduct "any investigation into what happened and the extent of Abbott's involvement." (*Id.* at 18–19.) Accordingly, even if Defendants had no contractual obligation to investigate "actions by third parties, like Defendant Moore," at this stage, Plaintiff has plausibly alleged that Defendants had a contractual obligation to investigate actions taken by Defendants' agents, which Defendants do not dispute. (Dkt. 42 at 17; *see id.* at 16 ("The ICA governs the relationship between eXp Realty and its agents.").) *See Perez v. Sears Life Ins. Co.*, No. 12-23535-CIV, 2013 WL 12092092, at *2 (S.D. Fla. Jan. 29, 2013) (concluding that a breach of contract claim was adequately pled).

### 2. Ratification

"[A] principal may . . . still be liable for the acts of its agent which were outside the scope of the agent's authority if the principal subsequently ratifies the actions." *Trevarthen v. Wilson*, 219 So. 3d 69, 72 (Fla. Dist. Ct. App. 2017). "It is a fundamental proposition of the law of agency that a principal may subsequently ratify its agent's act, even if originally unauthorized, and such ratification relates back and supplies the

original authority." *Kumar Corp. v. Nopal Lines, Ltd.*, 462 So. 2d 1178, 1185 (Fla. Dist. Ct. App. 1985). "Ratification, as applied to the law of agency, is the adoption or affirmance by a principal of the acts of his agent, either expressly, as by a written act, or impliedly, as by acceptance of the benefits of the" agent's actions. *Spurrier v. United Bank*, 359 So. 2d 908, 910 (Fla. Dist. Ct. App. 1978) (quotation omitted). "Ratification cannot occur unless the principal has full knowledge of all material facts and circumstances relating to the unauthorized act or transaction at the time of the ratification." *ABC Salvage, Inc. v. Bank of Am., N.A.*, 305 So. 3d 725, 729 (Fla. Dist. Ct. App. 2020) (quotation omitted). "Ratification of an agent's prior unauthorized actions occurs when the principal is fully informed of the agent's act and affirmatively manifests an intent to approve that act." *Stalley v. Transitional Hosps. Corp. of Tampa*, 44 So. 3d 627, 631 (Fla. Dist. Ct. App. 2010) (emphasis omitted).

In the amended complaint, Plaintiff includes a ratification count. (Dkt. 38 at 25–28.) In response to the motion to dismiss, Plaintiff acknowledges that ratification is a theory of liability and not an independent cause of action. (Dkt. 46 at 11.) Accordingly, the court dismisses count IV without prejudice for failure to state a claim. *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1121–22 (S.D. Fla. 2021) (dismissing ratification theory); *Noshirvan v. Couture*, No. 2:23-CV-1218-JES-KCD, 2025 WL 1769669, at *18 (M.D. Fla. June 26, 2025) (same). If Plaintiff repleads, Plaintiff shall specify which claims include a ratification theory of liability. *See Hossfeld v. Am. Fin. Sec. Life Ins. Co.*, 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (explaining that ratification was a theory by which a defendant could "be held vicariously liable

- 18 -

under federal common law agency principles" for violations committed by third parties).

### 3. Negligent Undertaking

Under Florida law, when an individual "undertakes to act . . . he is under an implied legal obligation or duty to act with reasonable care." *Banfield v. Addington*, 104 Fla. 661, 667 (1932). The undertaker is liable for harm resulting from his failure to use reasonable care if "his failure to exercise such care increases the risk of such harm" or "the harm is suffered because of the other's reliance upon the undertaking." *Wallace v. Dean*, 3 So. 3d 1035, 1051 (Fla. 2009) (emphasis omitted and quoting Restatement (Second) of Torts § 323 (1965)). "While negligence claims are based on a preexisting duty, negligent undertaking claims are based on an assumed duty." *Fabozzi v. United States*, No. 3:23CV10474-TKW-HTC, 2024 WL 4224158, at *10 (N.D. Fla. Sept. 17, 2024); *see Owen v. Carnival Corp.*, No. 18-25372-CIV, 2022 WL 2198101, at *2 (S.D. Fla. Mar. 9, 2022); *see also Stauffer Chem. Co. v. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967) ("When one voluntarily assumes a duty he is bound to perform it with care and if done negligently, he is liable for damage resulting from such negligence.").

Here, Plaintiff alleges that Defendants, through the contract, the incorporated policies and procedures and code of conduct, and repeated public representations, promised "to provide protective and investigative services to affiliated agents with respect to harassment, sexual assault, and related misconduct." (Dkt. 38 at 28.) Plaintiff further claims that Defendants "[p]ublicly represented . . . that they would create hotlines, resources, and a women-led task force to protect female agents in the

- 19 -

wake of widespread reports of druggings at [Defendants'] events." (*Id.* at 29.) Plaintiff alleges that these promises "[i]nduced reliance[] because Plaintiff reasonably relied on . . . Defendants' contractual commitments and public promises when she agreed to travel to" the conference. (*Id.* at 30–31; *id.* at 5–7 (explaining that Plaintiff believed "that the Shareholder Summit [in May] would be safe" after Defendants hosted a public meeting in February where they made certain promises regarding sexual assault claims in the wake of widespread reports of women being drugged and sexually assaulted at Defendants' events).) Plaintiff then traveled to Defendants' conference and attended a conference event, where she was drugged and then sexually assaulted. (*Id.* at 7–15.)

"Having undertaken these actions and having provided these assurances,"—specifically, hosting the February meeting and responding to allegations of women being drugged and sexually assaulted at Defendants' events with promises to address the issue—Defendants "increased the risk of harm that [Plaintiff] faced by" inducing her to attend Defendants' conference, where she attended an event and was drugged and then sexually assaulted. *See Wallace*, 3 So. 3d at 1052. Accordingly, the court concludes that Plaintiff states a claim for negligent undertaking. *See Owen*, 2022 WL 2198101, at *4 (permitting negligent undertaking claims to proceed where the defendant allegedly assumed a duty of care and then breached that duty, resulting in harm to the plaintiff); *Noon v. Carnival Corp.*, No. 18-23181-CIV, 2019 WL 3886517, at *11 (S.D. Fla. Aug. 12, 2019) (denying a motion to dismiss a negligent undertaking claim because, at this stage, "the factual allegations, and the legal theory underpinning

- 20 -

them, [we]re plausible and could lead a reasonable juror to find in [the p]laintiff's favor").

Defendants contend that Plaintiff fails to sufficiently allege that they undertook "to protect her from any conduct much less an alleged incident between her and a third party in a hotel room at a location unrelated to [Defendants'] event." (Dkt. 42 at 19; *see id.* (asserting that "[t]he crux of Plaintiff's negligent undertaking theory is that eXp represented . . . that it would protect her from, and investigate conduct concerning, sexual assault by the general public, including third parties like Defendant Moore" and that these "allegations [are] facially implausible since [Defendants are] not a worldwide policing agency").) But Defendants misconstrue Plaintiff's arguments. (*See* Dkt. 38.) In response to reports of women being drugged at Defendants' events, they hosted a public meeting to address these concerns and made certain assurances, which Plaintiff supposedly relied on. (Dkt. 38 at 5–7.) These included assurances that Defendants would "create a task force . . . to ensure the safety of female agents" and that agents would "have a way to address [Defendants] directly if they feel they have been victimized such that they can get resolution without having to go to the legal system." (*Id.* at 6.)

"It is clearly established that one who undertakes to act, even when under no obligation to do so, thereby becomes obligated to act with reasonable care." *Union Park Mem'l Chapel v. Hutt*, 670 So. 2d 64, 66–67 (Fla. 1996). Thus, the court concludes that, at this stage, Plaintiff adequately alleges that Defendants promised it would ensure the safety of female agents at Defendants' events after widespread reports of

- 21 -

women being drugged at such events, even assuming that ensuring the safety of Defendants' female agents at Defendants' events is not generally a duty owed by Defendants.  (*See* Dkt. 38 at 5–7.)  *See Wallace*, 3 So. 3d at 1052 (holding that the complaint adequately pleaded a claim of negligent undertaking because it alleged that the defendants "affirmatively and specifically undertook to provide aid" upon which others relied); *Slemp v. City of N. Miami*, 545 So. 2d 256, 258 (Fla. 1989) (holding that even if no general duty existed, once the defendant had undertaken to provide such protection, it assumes the responsibility to do so with reasonable care); *Hartley v. Floyd*, 512 So. 2d 1022, 1024 (Fla. Dist. Ct. App. 1987) (holding that a defendant's promise was sufficient to assume an undertaking that it had an obligation to carry out with reasonable care); *see also Sullivan v. Bottling Grp. LLC*, No. 8:13-CV-515-T-33MAP, 2013 WL 3209464, at *4 (M.D. Fla. June 24, 2013) (determining that the undertaker's doctrine applied even where the action taken was beyond the defendant's obligations).

Defendants also challenge the complaint as failing to allege how they increased the risk that Plaintiff "would be assaulted by a third party in a hotel room." (Dkt. 42 at 20.)  Again, the court disagrees.  Plaintiff alleges that she attended Defendants' conference, "[b]elieving that [it] would be safe," after listening to the meeting where Defendants "address[ed] the national news coverage" regarding the allegations "that several of [Defendants'] agents were drugged" at Defendants' events and made assurances to their agents that Defendants' took such claims seriously and were taking steps to ensure the safety of their female agents. (Dkt. 38 at 5–7.)  Plaintiff plausibly pleads that she "reasonably relied on" Defendants' "promises when she agreed to

travel" to the conference, which increased the risk that Plaintiff would be drugged at a conference event and then be sexually assaulted. (*Id.* at 30–31.) Thus, the court concludes that Plaintiff adequately pleads that Defendants increased Plaintiff's risk of harm. *See Wallace*, 3 So. 3d at 1052 (holding that the defendants alleged behavior increased the risk of harm by inducing reliance on the promise and foregoing other options).

## C. Shotgun Pleading

Finally, Defendants argue that Plaintiff's complaint is an impermissible shotgun pleading because "Plaintiff incorporates by reference all preceding paragraphs of every count and each count 'as if set forth herein' in each of her claims." (Dkt 42. at 22.) Although technically true, a shotgun pleading poses a problem only if "a defendant who reads the complaint would be hard-pressed to understand the grounds upon which each claim . . . rests." *Barmapov v. Amuial*, 986 F.3d 1321, 1326 (11th Cir. 2021) (quotation omitted). Here, the court concludes that the complaint is not so scattershot that Defendants cannot understand the grounds on which each claim rests. (*See* Dkt. 38.) Because the amended complaint provides Defendant with "adequate notice of the claims against [it] and the grounds upon which each claim rests," the amended complaint is not a shotgun pleading. *See Weiland*, 792 F.3d at 1323. It is not "virtually impossible to know" from the amended complaint "which allegations of fact are intended to support which claim(s) for relief," *see id.* at 1325 (emphasis and quotation omitted), so the court declines to dismiss the amended complaint as a shotgun pleading.

- 23 -

**CONCLUSION**

Accordingly:

1.  Defendants' motion to compel arbitration (Dkt. 42) is **DENIED**.

2.  Defendants' motion to dismiss (Dkt. 42) is **GRANTED in part and DENIED in part**.

    a.  Count IV is **DISMISSED without prejudice**.

    b.  The motion is otherwise **DENIED**.

3.  If Plaintiff wishes to submit a second amended complaint aimed at correcting the pleading deficiencies identified in this order, she shall do so on or before June 22, 2026.  Because the deadline for amending the pleadings in this case expired on November 3, 2025, (Dkt. 50 at 1), Plaintiff shall exclude from the second amended complaint any claims not asserted in the amended complaint, unless prior to filing the second amended complaint, Plaintiff satisfies the Federal Rules of Civil Procedure by establishing "good cause" and seeking "the [court]'s consent," Fed. R. Civ. P. 16(b)(4), in a motion that fully complies with all applicable Local Rules, including Local Rule 3.01.

4.  Defendants shall answer Plaintiff's amended complaint (Dkt. 38) on or before June 23, 2026.

5.  The stay is **LIFTED**, and the Clerk is **DIRECTED** to reopen the case.

- 25 -

**ORDERED** in Orlando, Florida, on June 5, 2026.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

- 25 -